AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
Items belonging to Adam Joseph Phipps Currently in )
Possession of United States Probation )
)

FILED
JUL 03 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

'19 MJ 2784

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252 and 2252A | Certain activities relating to material involving the sexual exploitation of minors and constituting or containing child pornography |

The application is based on these facts:

See Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Daniel P. Evans
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/3/19

_____
*Judge's signature*

City and state: San Diego, California     Hon. Jill L. Burkhardt, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Daniel P. Evans, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since April of 2005. I am currently assigned to the Violent Crimes Squad of the San Diego Field Office, where I primarily investigate crimes concerning child exploitation and the receipt, possession, production, advertisement, and transmission of child pornography.

2. My experience as an FBI Agent has included the investigation of cases involving the use of computers and the Internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, child pornography identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of computer equipment.

3. This affidavit is made in support of an application by the United States of America for the issuance of a warrant to search the entire property seized from Phipps on June 27, 2019, within the Southern District of California, as described more fully in Attachment A, for the items described in Attachment B, which items constitute evidence, fruits, and instrumentalities of violations of Federal laws, namely, 18 U.S.C. §§ 2252 and 2252A, certain activities related to materials involving the sexual exploitation of children and constituting or containing child pornography.

4. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of

1

documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

5. In January of 2007, a state issued search warrant was executed on the San Diego County residence of Adam Joseph Phipps. This warrant was conducted by members of the San Diego Internet Crimes Against Children Task force (ICAC) of which I am a member.

6. During the execution of the warrant, task force officers discovered a large quantity of child pornography despite Phipps' use of encryption to hide his activity. Based on the findings, Phipps was taken into federal custody and charged with possession of child pornography in federal court.

7. Phipps entered a guilty plea to the charges and was sentenced to 97 months in federal custody (07cr0162-LAB). In February 2014, Phipps was released from prison and became subject to his terms of supervised release for a period of 10 years. These terms included a search condition, requiring him to submit to searches by any law enforcement officer based on reasonable suspicion that he has violated his terms of release. The terms also included a requirement that he refrain from owning or using any unapproved computer devices or phones, and that he consent to the installation of monitoring software on any computers or devices owned by him.

8. In or about April of 2019, during a review of the court ordered monitoring of Phipps' computer, a United States Probation Officer noticed a screen shot that appeared to show Phipps purchasing a computer on an online auction site.

According to the Probation Officer, Phipps had not obtained permission to purchase a computer. On June 27, 2019, Probation officers went to his San Diego residence, which is also his place of employment, and conducted a search for the device.

9. Defendant is a driver for a moving company, and lists the address of the company's office located in San Diego, as his residence on his sex offender registry. Defendant sleeps on an air mattress in a separate room off the main break room of the company facility. When Probation Officers arrived at Phipps' place of employment/residence, Phipps' employer pointed out Phipps' backpack in the main break room, and additional items belonging to Phipps located in the separate room where Phipps sleeps on an air mattress. Among the belongings found in the separate room next to the air mattress was a laptop computer, located near a United States Postal Service box. The laptop computer matched the make and model Phipps was searching for on the online auction site. The printed label on the Postal Service box contains the date April 22, 2019. Based on his possession of an unauthorized computer in violation of his terms of supervised release, Phipps was taken into custody by the United States Marshals Service that same day. The following items were seized from Phipps' backpack and/or the area near the air mattress:

- Toshiba Tecra M9-S5517V Laptop (Serial Number 78066869H)
- 16 GB SanDisk Memory Card
- Dell DVD Drive[1]
- Thumb Drive
- DVD labeled "Carsoft" with Case
- Loose Notebook Paper with email address and possible passwords
- Verizon Mifi Hotspot[2]

---

[1] It is unknown whether there is a disc located in the DVD drive.

[2] A hotspot is used to connect to the internet and based on my training and experience I know that a variety of data may be stored on such device, including the MAC (media access control) Address. A MAC Address is a unique identifier for a device that connects to the internet. This unique identifier can assist investigators in obtaining Internet Protocol (IP) Addresses from electronic service providers. Analysis of this hotspot device and its unique identifiers may aid investigators in identifying IP addresses used by the subject to connect to a variety of websites, including the auction site where it appears he purchased the laptop computer.

- USPS Shipping box dated April 22, 2019
- SanDisk Cruzer Glide 32 GB Thumb Drive
- Targus DVD Case with numerous DVDs
- Vaultz DVD case with DVDs

In addition, a wallet and an Alcatel 4044N Cellular telephone (IMEI: 014892000385207), were seized from Phipps' person. Law enforcement officers also identified an 8 GB Secure Digital (SD) Media card inside a navigation unit in the center console of Phipps' vehicle. All seized items are currently located in the evidence vault of United States District Court, Southern District of California, Probation Office, 101 West Broadway, Suite 700, San Diego, California 92101, within the Southern District of California.

10. On July 1, 2019, the United States Probation Office contacted me and informed me they had located child pornography images and videos on the laptop found among Phipps' possessions. That same day I traveled to the probation office where they showed me the same files they had already encountered. Among these files were the following:

A) A video showing a clothed prepubescent female performing oral sex on an adult male.

B) An image of an adult male performing oral sex on a nude prepubescent female who is sitting on top of his chest.

C) An image of an adult male preparing to insert his penis into the vagina of a nude prepubescent female who is laying on her back.

D) An image of a prepubescent female holding the penis of an adult male in her hand

E) An image of a prepubescent female inserting an adult's penis into her mouth.

4

11. In addition to the above files, Probation officers identified additional images, videos, and file names that were consistent with child pornography.

12. As a result of my training and experience in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt, distribution and possession of child pornography.

   a. These individuals may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasizing while viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

   b. These individuals may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, sliders and/or drawings or other visual media. These individuals often use these materials for their own sexual arousal and gratification. Furthermore, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   c. To the extent these individuals possess and maintain "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., they almost always maintain those hard copies in the privacy and security of their home. They typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are

not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

   d. Likewise, these individuals often maintain their digital or electronic collections of child sexual exploitation images in a safe, secure, and private environment, such as a computer and surrounding area, or on cellular telephones. These collections are often maintained for several years and are kept close by, usually at the individual's residence, on his or her person, or in his or her vehicles, to enable the individual to view the collection, which is valued highly.

   e. These individuals also may correspond with and/or meet others to share information and materials; are rarely able to completely destroy correspondence from other child pornography distributors/collectors; conceal correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

   f. These individuals prefer not to be without their child sexual exploitation images for any prolonged time period. Collectors will take their collection with them if they change residences, as the collection is considered to be a prized possession. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. That said, there are individuals with a sexual interest in children who download and view digital images of child sexual exploitation, and delete it in order to avoid detection by law enforcement or other people. However, even in cases where these images are deleted, or concealed via encryption software, forensic examiners can use specialized tools to recover the deleted files or access encrypted files.

   g. These individuals often use specialized software to conceal the existence of evidence and/or destroy said evidence. There are a variety of different programs that an individual can use to accomplish these objectives, many of which

are free. Additionally, these individuals have been known to store child pornography in unconventional physical locations, as well as in unusual digital locations on computers and cellular phones. These files and folders, or applications, have been misnamed or renamed in an attempt to mislead investigators.

      h.    These individuals will often download and store images of children they know or with whom they have communicated, as well as their communications with those children. The images may not necessarily be pornographic or obscene in nature; however, they are often used for the individuals' sexual gratification.

      13.    Phipps exhibits the common characteristics described above of someone involved in the receipt, possession, and accessing of child pornography, as evidenced by the facts set forth in this Affidavit. Specifically, Phipps has a history of possessing child pornography and was in possession of an unauthorized computer which contained files of child pornography.

      14.    Based upon my experience and training, I know that cellular phones and other small electronic devices such as thumb drives, SD cards, and SIM cards can store digital information, such as video and image files, as well as passwords, character strings, or other data useful in gaining access to encrypted devices. These types of small electronic devices can easily be transferred between different devices and may include multiple types of data. Individuals also often write down such data and store it in a safe location, such as a wallet. Further, based upon my knowledge of Phipps' prior encounters with law enforcement, where he used encryption on computer and other digital devices, I believe there may be evidence contained on other seized devices which would assist law enforcement in gaining access to any encrypted device.

# PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE COMPUTER AND OTHER ELECTRONIC STORAGE DEVICES

15. With the approval of the Court in signing this warrant, Agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, which may contain data subject to seizure pursuant to this warrant:

<u>Seizure and Retention of Instrumentalities</u>

a. Based upon the foregoing, there is probable cause to believe that any computers and other electronic storage devices encountered during this search are instrumentalities of the enumerated offenses because there is probable cause to believe that they may contain contraband and fruits of crime as provided at Rule 41(c)(2), Fed R. Crim. P., or were used in committing crime as provided at Rule 41(c)(3). Consequently, the computers and any other electronic devices are subject to seizure, retention, and possible forfeiture and destruction. Computers, other electronic storage devices, and media confirmed onsite to contain contraband, constitute fruits of crime, or to have been used to commit crime will not be returned but will be imaged offsite and analyzed as provided beginning at subparagraph (c) below. The onsite confirmation may be provided by an owner or user of the computer or storage device or, if feasible, may be obtained by conducting a limited onsite forensic examination to determine if the subject media contains any contraband or otherwise is an instrumentality. Computers and other electronic storage devices and media that are not confirmed onsite as instrumentalities will be taken offsite for imaging and preliminary analysis in accordance with subparagraph (b) below.

b. The offsite imaging and preliminary analysis of computers, other electronic storage devices, and media to confirm their status as instrumentalities will

8

be conducted within forty-five (45) days of seizure. Seized items confirmed to be instrumentalities will not be returned and will be further analyzed as provided below. If the preliminary analysis, by definition an incomplete or partial analysis, does not confirm that a seized item is an instrumentality, the original item will be returned promptly to its owner, absent an extension of time obtained from the owner or from the Court. An image of the items will be retained and subjected to a complete forensic analysis, as provided below.

c.  Computers and other electronic storage devices and media that are retained as instrumentalities will not be returned to its owner. The owner will be provided the name and address of a responsible official to whom the owner may apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. In the event that the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Rule 41(g), Federal Rules of Criminal Procedure.

<u>Identification And Extraction Of Relevant Data</u>

d.  A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment, and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and

access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

   e. Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it, when and how it was created, downloaded, or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Sometimes it is possible to recover and entire document that was never saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications do not store data searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computer or networks, and whether the user accessed or used

1  other programs or services in the time period surrounding events with the relevant
2  data can help determine who was sitting as the keyboard.
3           f.     It is often difficult or impossible to determine the identity of the
4  person using the computer when incriminating data has been created, modified,
5  accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the
6  incriminating data.  Computers generate substantial information about data and
7  about users which generally is not visible to users.  Computer-generated data,
8  including registry information, computer logs, user profiles and passwords, web-
9  browsing history, cookies, and application and operating system metadata, often
10 provides evidence of who was using the computer at a relevant time.  In addition,
11 evidence such as electronic mail, chat sessions, photographs and videos, calendars,
12 and address books stored on the computer may identify the user at a particular,
13 relevant time.  The manner in which the user has structured and named files, run or
14 accessed particular applications, and created or accessed other, non-incriminating
15 files or documents, may serve to identify a particular user.  For example, if an
16 incriminating document is found on the computer but attribution is an issue, other
17 documents or files created around that same time may provide circumstantial
18 evidence of the identity of the user that created the incriminating document.
19          g.     Analyzing data has become increasingly time-consuming as the
20 volume of data stored on a typical computer system and available storage devices
21 has been mind-boggling.  For example, as single megabyte of storage space is
22 roughly equivalent of 500 double-spaced pages of text.  A single gigabyte of storage
23 space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced paged
24 of text. Computer hard drives are now being sold for personal computers capable of
25 storing up to 2 terabytes (2,000 gigabytes) of data.  And, this data may be stored in
26 a variety of formats or encrypted (several new commercially available operating
27 systems provide for automatic encryption of data upon shutdown of the computer).

The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

h. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred and twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this Court.

i. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE**

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained

on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**GENUINE RISK OF DESTRUCTION OF DATA**

19. Based upon my experience and training, and the experience and training of other Agents with whom I have communicated, it is not uncommon for technically sophisticated criminals to use encryption programs to destroy data that can be

triggered remotely or by a pre-programmed event or keystroke and sophisticated techniques to hide data. In this case, only if the subject receives advance warning of the execution of this warrant, will there be an elevated risk of destruction or concealment of evidence.

### PRIOR ATTEMPTS TO OBTAIN DATA

20. The Probation Office has taken steps to obtain data from some of the seized devices as noted herein. The United States has not attempted to obtain this data by other means.

### CONCLUSION

21. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violation of 18 U.S.C. §§ 2252 and 2252A may be located on the seized items described in Attachment A. I, therefore, respectfully request that the attached warrant be issued authorizing the seizure of the items listed in Attachment B.

Daniel P Evans, Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 3rd day of July, 2019.

Hon. JILL L. BURKHARDT
United States Magistrate Judge

14

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The property to be searched is described below:

- Toshiba Tecra M9-S5517V Laptop (Serial Number 78066869H)
- 16 GB SanDisk Memory Card
- Alcatel 4044N Cellular telephone (IMEI: 014892000385207)
- Dell DVD Drive and contents thereof
- Thumb Drive
- DVD labeled "Carsoft" with Case
- Wallet
- Loose Notebook Paper with email address and possible passwords
- Verizon Mifi Hotspot
- USPS Shipping box dated April 22, 2019
- SanDisk Cruzer Glide 32 GB Thumb Drive
- Targus DVD Case with numerous DVDs
- Vaultz DVD case with DVDs
- 8 GB Secure Digital Media Card

which is currently located in the evidence vault of United States District Court, Southern District of California, Probation Office, 101 West Broadway, Suite 700, San Diego, California 92101.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization is sought to search for and seize evidence that relates to the violation of 18 U.S.C. §§ 2252 and 2252A. This authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computer media will be conducted in accordance with the "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant. Items to be seized include the following:

a. All documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

b. User-attribution data to include data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

c. If the digital media storage device is found to contain information otherwise called for by this warrant:

(1) Evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software;

(2) Evidence of the lack of such malicious software; and

  (3) Evidence of the attachment of the storage device to any computer or digital device.

  d. Information relating to the install date of the operating system, if present, or other programs for distribution of electronic files including for child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

  e. Any and all usernames, email accounts, or online identities that may have been used for the sexual exploitation of minors or for communications with individuals sharing an interest in the sexual exploitation of children.

  f. Any and all documents, financial records, and financial transactions that may show the purchase of electronic devices from online auction sites.

  g. Any and all documents, both physical and electronic, that may contain encryption passwords, keys, or other files necessary to gain access to encrypted devices or data, or that may aid investigators in cracking passwords that may be present on seized devices.